UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
CHARLEMAGNE DUMAY,

                Plaintiff,

      - against -

CITY OF NEW YORK, CITY OF NEW YORK
DEPARTMENT OF PARKS AND RECREATION, JAMES
GREENAN, JOSE MACCERA, MARTIN BRENNER,

                Defendants.
----------------------------------------X

**MEMORANDUM AND ORDER**

09 CV 6866 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Charlemagne Dumay ("Dumay"), formerly a computer technician for the New York City Parks Department ("Parks Department"), brings this action pursuant to 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), 42 U.S.C. § 1981, the New York State Human Rights Law, N.Y. Exec. Law §§ 290-297 ("NYSHRL"), the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131 ("NYCHRL"), and New York State law.  In his complaint, Dumay alleges, <u>inter</u> <u>alia</u>, that the City of New York, the Parks Department, Jose Maccera ("Maccera"), James Greenan, and Martin Brenner (collectively, "defendants") discriminated against him on the basis of race and national origin.

Before this Court is defendants' motion for summary judgment, in which defendants maintain that they had a legitimate, nondiscriminatory reason for their actions vis-à-vis

1

Dumay, namely Dumay's improper use of the Parks Department's time reporting system.

For the reasons set forth below, we grant defendants' motion for summary judgment.

**BACKGROUND**

I.    **Factual Background**

Dumay is a black male who was born in Haiti and immigrated to the United States in 1996.[1] (Zinaman Decl. Ex. B at 8:1-12.) He was first employed by the Parks Department as an intern in 2000 and was hired to the full time position of Field Technician upon the completion of his internship. (R. 56.1 ¶¶ 5-6.) As a

---

[1] The background is derived from Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1, filed March 25, 2011 ("R. 56.1"), the Declaration of Jamie Zinaman in Support of Defendants' Motion for Summary Judgment, filed March 25, 2011, the exhibits annexed thereto ("Zinaman Decl. Ex."), Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, filed April 25, 2011 ("P. Opp."), and the exhibits annexed thereto ("P. Ex."). Defendants correctly note that plaintiff failed to comply with Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"), which mandates that "[t]he papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party." Local Rule 56.1(b). While we are thus entitled to treat all facts in Defendants' 56.1 statement as admitted, Local Rule 56.1(c), we employ our broad discretion in this area and conduct our own review of the record to confirm defendants' recitation of the facts and supplement those facts where necessary. See Holtz v. Rockefeller & Co., Inc., 358 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules. Thus...while a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement.") (internal citations and quotation marks omitted). We note that after engaging in such a review, we find the Defendants' recitation of the facts to be accurate.

Field Technician, Dumay traveled to sites throughout New York City to tend to computer problems as they arose.[2]  (R. 56.1 ¶ 6.)

All parties agree that through the majority of his tenure at the Parks Department, Dumay performed his job responsibilities admirably.  (P. Opp. at 2.)  Dumay did not have any major disputes with his supervisors prior to the allegations concerning the time reporting system, to be described infra, but he did make repeated inquiries with his immediate supervisor, defendant Maccera, concerning his salary and the potential for merit-based pay increases.  (R. 56.1 ¶ 73.)  These inquiries took place in the final two years of Dumay's employment, usually after Dumay received his period job evaluations.  (R. 56.1 ¶¶ 73-74.)

In February 2008, the Parks Department adopted a time reporting system for employees known as "City Time."  (R. 56.1 ¶ 15.)  Under this system, employees record their time of arrival at, and departure from, work by means of a biometric hand scanning system.  (R. 56.1 ¶ 15.)  In addition, once per week employees must log into the City Time website and certify that the information recorded is accurate.  (R. 56.1 ¶ 15.)

---

[2] While employed in this full-time position, Dumay passed a civil service examination and was converted to the civil service title of Computer Aide. Despite this change in title, Dumay's responsibilities remained unchanged through the duration of his employment with the Parks Department.  (R. 56.1 ¶¶ 6-7.)

As the City Time system was set to be implemented, Dumay was informed that he was to scan only at a facility known as Arsenal West, which was the facility from which he was dispatched for work assignments.  (R. 56.1 ¶¶ 9, 16.)   This facility is located on West 61st Street in Manhattan.  (Zinaman Decl. Ex. M at 1.)   In the face of this guidance, Dumay asked Maccera whether he could be granted permission to scan at a Bronx facility known as Ranaqua, where Dumay had several work assignments.  (R. 56.1 ¶ 19.)   Maccera responded that Dumay could not scan at any facility on a permanent basis other than Arsenal West.  (R. 56.1 ¶ 20.)

Apparently unwilling to accept this restriction, on March 11, 2008, Dumay emailed the Parks Department Help Desk seeking to be added to the list of persons authorized to scan at Ranaqua.  (R. 56.1 ¶ 22.)   The following day, Dumay repeated this request to Susan Lonergran, an employee in the office of the Chief of Administrative Services.  (R. 56.1 ¶ 23.)   Ms. Lonergran informed Dumay that she could not add him to the list because he was not assigned to the Ranaqua facility.  (R. 56.1 ¶ 23., Zinaman Decl. Ex. D.)   Nevertheless, Dumay's request was routed to the Payroll Department, and on March 12, 2008, Dumay was added to the scanning device at Ranaqua.  (R. 56.1 ¶ 24.)   Dumay proceeded to scan out of the Ranaqua facility seven times

over the following four and a half months.  (Zinaman Decl. Ex. N.)

While Dumay may have scanned only infrequently at Ranaqua, he made far greater use of a Queens facility known as Passarelle, located just twenty minutes from his home.  (R. 56.1 ¶ 30.)  Despite never receiving affirmative authorization to scan at Passarelle,[3] Dumay scanned in and out of the facility over one hundred and twenty times between March 2008 and July 2008.  (R. 56.1 ¶ 27.)  Defendants contend that by so doing, Dumay received credit for time worked when he was actually just commuting between his home and the Arsenal West facility.  (R. 56.1 ¶¶ 32-33.)

On July 24, 2008, Maccera received a tip from another employee that Dumay had been engaging in these unauthorized time reporting practices.  (R. 56.1 ¶ 35.)  That day, Maccera held a meeting with Dumay and defendant Greenan, Maccera's supervisor, at which Dumay admitted to having scanned at the Ranaqua and Passarelle facilities.  (R. 56.1 ¶¶ 43-44.)  Maccera and Greenan referred the matter to the Parks' Advocate Department, which in turn referred the case to the New York City Department of Investigation ("DOI").  (R. 56.1 ¶¶ 41, 46.)

---

[3] Dumay did not have to go through administrative channels to be able to scan at Passarelle because it served as the Parks Department's training center and thus global access was granted to the facility.  (R. 56.1 ¶ 28.)

Maccera testifies that in late October 2008, a DOI official verbally informed him that DOI had found sufficient evidence to hold a formal interview with Dumay.  (R. 56.1 ¶ 49.)  Several days later, on October 29, 2008, Maccera and Greenan met with Dumay and notified him that he would be temporarily reassigned to the Help Desk and his administrative passwords would be temporarily revoked.  (R. 56.1 ¶ 50.)  At this same meeting, a conversation arose concerning an email Dumay had submitted to the City Commission on Human Rights ("CCHR") just a week earlier.[4]  (Zinaman Decl. Ex. I.)  In that October 22, 2008, email (and a subsequent email exchange between Dumay and a CCHR official), Dumay suggested that racial minorities in his office had been passed over for pay raises that were routinely granted to other employees.[5]  (P. Ex. D. at 6-7)

Dumay claims that the reassignment to the Help Desk stemmed from his supervisors' extreme discontent with his having lodged this complaint with the CCHR.  (Zinaman Decl. Ex. I.)  Defendants counter that the reassignment was due solely to the

---

[4] As will be discussed _infra_, Maccera claims that it was Dumay who brought up the October 22 communication to the CCHR.  There is no evidence that the CCHR ever relayed Dumay's inquiry to anybody at the Parks Department.

[5] Defendants urge the Court to disregard the October 22, 2008, correspondence because it was not produced by the plaintiff during discovery, as required by Rule 26 of the Federal Rules of Civil Procedure.  Defendants' Reply Memorandum of Law in Further Support of Their Motion for Summary Judgment at 5.  While this argument is well-taken and plaintiff has offered no explanation as to why the email exchange was not produced, consideration of the email will not prejudice the defendants for reasons to be discussed _infra_.  Therefore, for completeness, we will consider the October 22, 2008, email exchange with the CCHR.

ongoing DOI inquiry, and that this explanation was clearly conveyed to Dumay at the October 29 meeting. (R. 56.1 ¶¶ 54-55; Zinaman Decl. Ex. I)

On November 7, 2008, the DOI reported its findings to the Parks' Advocate Department, concluding that Dumay had indeed violated the time reporting rules. (R. 56.1 ¶¶ 61-64.) Dumay was subsequently served with disciplinary charges and brought before the Office of Administrative Trials and Hearings ("OATH"). (R. 56.1 ¶ 66.) Following an OATH hearing, an Administrative Law Judge found Dumay guilty of misconduct and recommended his termination.[6] (R. 56.1 ¶ 71.) Dumay was consequently terminated from his position effective May 15, 2009. (R. 56.1 ¶ 72.)

## II. **Procedural History**

Dumay's allegations of discriminatory treatment only began after he learned that his time reporting abuses had been discovered. His earliest suggestion of discrimination was the previously referenced October 22, 2008, email submitted to the CCHR. In this email, Dumay indicated that he wanted to file a complaint against his supervisors and asked how to proceed with the process. (P. Ex. D. at 6-7.) There is no evidence, however, that the CCHR ever opened a formal investigation in

---

[6] Dumay testifies that he challenged the OATH decision before a Civil Service Commission, which upheld the decision. Dumay indicates that he did not challenge the OATH decision in an Article 78 proceeding in state court. (Zinaman Decl. Ex. B at 87:7-25.)

connection with Dumay's email, or that the contents of the communication were ever relayed by the CCHR to officials at the Parks Department.

After Dumay was informed on November 2, 2008, that he had not been chosen for a Senior Technician position for which he had applied in July 2008, Dumay sent an email to the Commissioner of the Parks Department, again suggesting that racial discrimination was a factor in the Department's actions. (Zinaman Decl. Ex. Q.)  Specifically, Dumay indicated that if he did not "hear anything back from parks," he would "file a complaint with the Human right commission, the public advocate of NY...[and] contact [his] elected officials and take it to the media because racism still exists at parks." (Zinaman Decl. Ex. Q.)  The Parks Commissioner forwarded this email to the Parks Department's Equal Employment Opportunity ("EEO") office, which undertook an investigation and ultimately issued a report finding no evidence to substantiate Dumay's claim of discrimination.  (R. 56.1 ¶¶ 95-97, Zinaman Decl. Ex. R.) Undeterred, on December 8, 2008, Dumay sent another email to the Parks Commissioner elaborating on his previous allegations.  (R. 56.1 ¶ 100, Zinaman Decl. Ex. T.)  The EEO undertook another investigation in response to this email, and on February 27, 2009, again issued a report finding no evidence of discrimination.  (R. 56.1 ¶ 109, Zinaman Decl. Ex. U.)

The same day that the EEO issued this second report, Dumay filed a complaint with the New York State Division of Human Rights alleging employment discrimination on the basis of national origin and retaliation for having threatened to sue the Parks Department.  (R. 56.1 ¶ 110, Zinaman Decl. Ex. W.)  On July 12, 2010, the United States Equal Employment Opportunity Commission ("EEOC") issued Dumay a right to sue letter.  (R. 56.1 ¶ 111, Zinaman Decl. Ex. W.)

Dumay commenced the instant action on August 4, 2009, and filed an amended complaint on September 17, 2009.  The amended complaint contains ten causes of action, including: causes of action under Title VII and 42 U.S.C. § 1981 for discrimination on the basis of race and national origin and retaliatory discrimination; cause of action under the NYHRL and NYCHRL for retaliatory discrimination; and a cause of action for intentional infliction of emotional distress.  Following discovery, defendants filed their motion for summary judgment.

## DISCUSSION

### I.  Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise

9

properly supported motion for summary judgment; the requirement
is that there be no genuine issue of material fact." <u>Scott v.
Harris</u>, 550 U.S. 372, 380 (2007) (quoting <u>Anderson v. Liberty
Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)); <u>see also</u> <u>Quarles v.
Gen. Motors Corp.</u>, 758 F.2d 839, 840 (2d Cir. 1985). "Only
disputes over facts that might affect the outcome of the suit
under the governing law will properly preclude the entry of
summary judgment." <u>Anderson</u>, 477 U.S. at 248.

On a motion for summary judgment, the initial burden rests
with the moving party to make a prima facie showing that no
issues of material fact exist for trial. <u>See</u> <u>Celotex Corp. v.
Catrett</u>, 477 U.S. 317, 330-31 (1986). Once this showing is
made, "[t]o defeat summary judgment, the non-movant must produce
specific facts" to rebut the movant's showing and to establish
that there are material issues of fact requiring trial. <u>Wright
v. Coughlin</u>, 132 F.3d 133, 137 (2d Cir. 1998) (citing <u>Celotex</u>,
477 U.S. at 322). In determining whether a genuine issue of
material fact exists, a court must view the facts in the light
most favorable to the non-moving party and make all reasonable
inferences in that party's favor. <u>See</u> <u>Fincher v. Depository
Trust & Clearing Corp.</u>, 604 F.3d 712, 720 (2d Cir. 2010).

"Because direct evidence of an employer's discriminatory
intent will rarely be found," motions for summary judgment in
employment discrimination actions should be evaluated with

10

caution.  Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997).  "However, even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment."  Id. Thus, it is now well-settled that "summary judgment may be appropriate even in the fact-intensive context of discrimination cases."  Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001).

## II.  **Federal Claims**

### A.  **Discrimination Claims**

Title VII claims and claims for race and national origin discrimination under § 1981 are analyzed under the three-step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See, e.g., Hongyan Lu v. Chase Inv. Services Corp., 412 Fed.Appx. 413, 418 (2d Cir. 2011); Ruiz v. County of Rockland, 609 F.3d 486, 491-92 (2d Cir. 2010).

In the first step of this framework, the employee bears the burden of producing evidence sufficient to support a prima facie case of discrimination.  See McDonnell Douglas, 411 U.S. at 802. To establish a prima facie case of discrimination, a plaintiff must show: (1) membership in a protected class; (2) qualification for the position he held; (3) an adverse employment action; and (4) that the adverse employment action

occurred under circumstances that give rise to an inference of discrimination. Ruiz, 609 F.3d at 491-92.

Second, once the plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employment action." Hongyan Lu, 412 Fed.Appx. at 415 (quoting McDonnell Douglas, 411 U.S. at 802) (internal quotation marks omitted). "The defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." Id. (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993)) (internal quotation marks omitted)

Third, if the defendant articulates a nondiscriminatory explanation for the action, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" Patterson v. County of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir. 2004) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). That is, a plaintiff must produce "not just some evidence, but sufficient evidence" to support a rational finding that discrimination was the true reason for the adverse

employment action.  <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 42 (2d Cir. 2000) (internal quotation marks omitted).

Defendants contend that Dumay fails to establish a prima facie case of discrimination or retaliation.  Defendants further maintain that, even assuming Dumay established a prima facie case, defendants had a legitimate, nondiscriminatory reason for their actions – Dumay's improper use of the City Time system. Finally, defendants contend that there is no evidence of pretext.

### 1.   **Prima Facie Case**

There is no dispute that Dumay, a black male of Haitian origin, is a member of a protected class.  Nor is there any dispute that Dumay was qualified for his position as a Field Technician.  The parties do dispute, however, the extent to which Dumay suffered adverse employment actions, and whether those actions, if so classified, give rise to an inference of discrimination.

### a.  **Adverse Employment Actions**

In the context of a Title VII discrimination claim, an adverse employment action is defined as a "materially adverse change in the terms and conditions of employment."  <u>Sanders v. New York City Human Res. Admin.</u>, 361 F.3d 749, 755 (2d Cir. 2004) (internal quotation marks omitted).  "To be materially adverse, a change in working conditions must be more disruptive

than a mere inconvenience or an alteration of job responsibilities." Id. (internal quotation marks omitted).

Dumay claims to have suffered four adverse employment actions attributable to discrimination: (1) the failure to receive merit-based pay increases from 2004 to 2008; (2) the temporary reassignment to the Help Desk and revocation of his administrative passwords on October 29, 2008; (3) the failure to be promoted to the position of Senior Technician in November 2008; and (4) the termination of his employment in May 2009. (P. Opp. at 6-11.) Defendants dispute the classification of the first two of these actions as adverse for purposes of Title VII. (Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("D. Mem.") at 3-6.)

With respect to Dumay's compensation, defendants rely on an unchallenged affidavit setting forth the salaries of Parks Department Field Technicians at times relevant to Dumay's claims. (Zinaman Decl. Ex. E.) The affidavit reveals that in October 2008, of the eleven individuals employed solely as Field Technicians, Dumay earned the fourth highest salary, at $45,886.[7] (Zinaman Decl. Ex. E.) Dumay has not presented any evidence to contradict this data, nor has he produced any admissible evidence demonstrating that other Field Technicians received

---

[7] There were three additional Field Technicians who earned higher salaries than Dumay, but these workers also held the position of Site Administrator, a title not held by Dumay. (Zinaman Decl. Ex. E ¶¶ 18-20.)

merit-based pay increases at any time that he was eligible to receive one but did not.[8]  Given his relatively strong financial standing in relation to his peers, and the absence of any evidence that he was treated less favorably than his peers in any specific context, Dumay has not established a genuine issue of material fact that he suffered adverse employment action with respect to his compensation.

With regard to the one week reassignment to the Help Desk and revocation of administrative passwords, which occurred after the DOI had decided that there was sufficient evidence to formally interview Dumay, defendants emphasize that Dumay's title and salary did not change as a result of these measures. While a transfer that does not result in a reduction of pay or title may still qualify as adverse action if it materially alters the terms and conditions of employment, see, e.g., Patrolmen's Benevolent Ass'n v. City of New York, 310 F.3d 43, 51-52 (2d Cir. 2002) (transfer to police precinct at which officer could not specialize in area in which he had been trained); de la Cruz v. New York City Human Res. Admin. Dep't of

---

[8] Instead, Dumay maintains that he had been performing the responsibilities of a Senior Technician but had not been paid a salary commensurate with those responsibilities.  (P. Opp. at 7.)  While Maccera concedes that Dumay had been "unofficially" considered a senior technician within the office, the Parks Department did not have official Senior Technician positions until November 2008, by which point Dumay was under investigation for his misuse of City Time.  Moreover, Maccera states that beginning in 2007, employees in his division could receive merit-based pay increases only in conjunction with a formal promotion, the possibility of which only arose for Dumay with the November 2008 openings.  (Zinaman Decl. Ex. C. at 55:7-22, 124:3-16.)

*Social Servs.*, 82 F.3d 16, 21 (2d Cir. 1996) (transfer to a less prestigious unit of social services department), we note that Dumay's reassignment lasted just one week, after which he was restored to his previous responsibilities. See Witkowich v. Holder, No. 05 Civ. 7756 (GBD), 2010 WL 1328364, at *4 (S.D.N.Y. Mar. 31, 2010) (fact that plaintiff's transfer was for a temporary period of four to six weeks weighed against finding prima facie case of discrimination). This factor, taken in conjunction with the lack of change in salary or title, strongly counsels against a finding of adverse action. However, because plaintiff's claims fail on several other grounds to be discussed infra, we assume, arguendo, that the measures taken pursuant to the October 29 meeting constitute adverse actions.

### b. Inference of Discrimination

Dumay is unable to establish a prima facie case of discrimination because he has not provided any evidence to support an inference of discrimination with respect to any adverse action he may have suffered. Although the burden of proof in establishing a prima facie case is "minimal," Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001), it is not non-existent. Specifically, "[the] determination of whether the circumstances giv[e] rise to an inference of discrimination must be a determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a

rational finder of fact to infer a discriminatory motive." Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 38 (2d Cir. 1994) (internal quotation marks omitted, alternation in original); see also Cramer v. Pyzowski, No. 04 CV 1122(SLT)(SMG), 2007 WL 1541393, at *8 (E.D.N.Y. May 25, 2007) (holding no inference of discrimination in the absence of any evidence other than plaintiff's self-serving statements).

A rational trier of fact simply could not infer a discriminatory motive in the choice not to promote Dumay or the decisions to reassign and then terminate him. The promotion and reassignment decisions were made after Dumay's improper time reporting practices had come to light and while he was actively under investigation by the DOI. The decision to terminate him was made pursuant to a formal administration process in which Dumay received a full hearing before an Administrative Law Judge. Moreover, Dumay has not pointed to any specific actions or comments by his supervisors from which one could infer discriminatory animus. As such, Dumay has not produced sufficient evidence to meet the admittedly minimal burden associated with a prima facie case of discrimination.

### 2.   Legitimate, Nondiscriminatory Rationale

Alternatively, assuming Dumay could establish a prima facie case of discrimination, defendants have articulated a

legitimate, nondiscriminatory reason for any adverse employment action.

As previously referenced, an Administrative Law Judge has found that Dumay violated the clear protocol for scanning in and out of his assigned facility.  See Zinaman Decl. Ex. M. (containing the Administrative Law Judge's opinion).  Given the nature of Dumay's misconduct, we pause to highlight the extraordinary nature of the instant complaint in the face of this behavior.  On the vast majority of days between March 10, 2008, and July 25, 2008, Dumay scanned in at Passarelle in the morning rather than Arsenal West, and on a majority of days, he scanned out of Passarelle in the afternoon.  (See Zinaman Decl. Ex. N.)  Given that Passarelle is located near Dumay's home but at least forty-five minutes from Arsenal West, Dumay was paid a significant amount of money for commuting time for which he, and not the taxpayers, was responsible.  In fact, the DOI estimates that well over $1,000 in taxpayer funds were expended in compensating Dumay for his commuting time.  (R. 56.1 ¶ 63.) Given the multiple warnings Dumay received to scan only at Arsenal West, any reasonable trier of fact would conclude that this misconduct was deliberate.

Dumay's failure to obtain the Senior Technician position, his temporary reassignment, and his eventual termination all occurred after these violations came to light.  It goes without

18

question that an employer may discipline an employee, or choose not to promote an employee, for violating internal policies that bear on the employee's level of pay.  Accordingly, defendants have articulated a legitimate, non-discriminatory reason for their actions.

### 3.   Pretext

Again assuming that Dumay could make out a prima facie case of discrimination, Dumay would be required to come forward with "sufficient evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the [defendants] were false, and that more likely than not [discrimination] was the real reason for the [employment action]."  Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (internal quotation marks omitted, alterations in original) (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996)).

Dumay has not produced any evidence to support a finding of pretext.  The reason cited by defendants for their actions – Dumay's misuse of City Time – was investigated by multiple independent entities through a formal administrative process. All parties to the investigation concluded that Dumay violated the Department's policies, and the Administrative Law Judge specifically recommended Dumay's termination.  There is

therefore no evidence to such suggest that the allegations of misconduct were pretext for unlawful discrimination.

**B.   Retaliation Claims**

Title VII makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  Title VII is violated when "a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause."  Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993).

Like claims of discrimination, retaliation claims are subject to the McDonnell Douglas burden-shifting framework.  Id. at 1038-39 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973)).  First, to establish a prima facie case of retaliation, an employee must show that (1) he engaged in protected activity under Title VII; (2) that the employer was aware of this activity; (3) that the employer took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse action. Kessler v. Westchester County Dep't of Social Servs., 461 F.3d 199, 205-06 (2d Cir. 2006).  If the plaintiff establishes a

prima facie case, the defendant has the burden of articulating a legitimate, non-retaliatory reason for the conduct, whereupon the burden shifts back to the plaintiff to introduce evidence disproving the legitimate reason offered by the defendant.  See Cosgrove, 9 F.3d at 1039.

Here, Dumay appears to allege two retaliatory acts: (1) the temporary reassignment to the Help Desk and revocation of his administrative passwords on October 29, 2008; and (2) the termination of his employment in May 2009.  He claims that these actions were in retaliation to his October 22, 2008, email to the CCHR and his subsequent emails and complaints to various local authorities.

To establish that he engaged in a protected activity, Dumay must show that he took action "to protest or oppose statutorily prohibited discrimination."  Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000).  However, Dumay "need only 'have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII.'"  Kessler, 461 F.3d at 210 (quoting McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d Cir. 2001)).  Dumay's complaints, beginning with the October 22, 2008, email exchange with the CCHR, did convey a belief that he faced unlawful discrimination.  Therefore, Dumay did engage in protected activity prior to the alleged retaliatory acts.

Dumay is nevertheless unable to establish a prima facie case of retaliation because he cannot demonstrate a causal connection between his protected activities and any adverse employment actions he may have suffered.[9]   To suggest a causal connection, Dumay relies primarily on the proximity in time between the October 22, 2008, email to the CCHR and his reassignment to the Help Desk just seven days later.   It is possible for a plaintiff to indirectly establish a causal connection by showing that the protected activity was followed closely in time by the adverse employment action.   Gorman-Bakos v. Cornell Co-op Extension, 252 F.3d 545, 554 (2d Cir. 2001)).   However, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."   Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001).   Here, months prior to the October 22 email, Dumay's supervisors had held two meetings with him to discuss the allegations concerning City Time, and the DOI had opened a formal investigation into the matter.   In fact, only a few days prior to the October 29 meeting, Maccera was called by a DOI official and told that DOI

---

[9] As with Dumay's discrimination claims, we will assume, arguendo, that the temporary reassignment and revocation of passwords qualify as adverse employment actions in this context.

had found sufficient evidence to bring Dumay in for a formal interview. (R. 56.1 ¶ 49.)

Equally importantly, Dumay has not produced any evidence to establish that the Parks Department had knowledge of the October 22 email prior to the October 29 meeting. The CCHR would have had little reason to notify the Parks Department of the email, as Dumay did not even register a formal complaint in this communication but rather merely inquired into the process associated with submitting a complaint. Even if the CCHR had wished to relay the contents of the October 22 email to the Parks Department, there is no documentation of any such communication having occurred.

Given the lack of such evidence, along with the steps that had already been taken to investigate Dumay's misconduct, we conclude that an inference of retaliation cannot arise with regard to the October 29 reassignment. Similarly, the decision to terminate Dumay was made pursuant to a formal administrative process that began months before Dumay ever engaged in protected activity. Thus, no causal connection can be established for the termination either.

Alternatively, even assuming Dumay could establish a prima facie case of retaliation, for the reasons discussed above, we conclude that Dumay's abuse of the City Time system constituted a legitimate, nondiscriminatory reason for the adverse

employment actions, and that Dumay has failed to offer sufficient evidence to support a finding that defendants' proffered explanation was merely pretext for unlawful retaliation.

## III. <u>State and City Law Claims</u>

### A.   <u>NYSHRL Claims</u>

Claims under the NYSHRL are subject to the same burden-shifting analysis applied to claims under Title VII. <u>See</u> <u>Estate of Hamilton v. City of New York</u>, 627 F.3d 50, 55 (2d Cir. 2010); <u>Spiegel v. Schulmann</u>, 604 F.3d 72, 80 (2d Cir. 2010); <u>Loeffler v. Staten Island Univ. Hosp.</u>, 582 F.3d 268, 277 (2d. Cir. 2009). Accordingly, Dumay's claims under the NYSHRL are dismissed for the reasons articulated above.

### B.   <u>NYCHRL Claims</u>

While courts in this Circuit have traditionally treated claims under the NYCHRL as co-extensive with claims under Title VII and the NYSHRL, recent cases suggest that NYCHRL claims must be "reviewed independently from and 'more liberally' than their federal and state counterparts." <u>Loeffler</u>, 582 F.3d at 278 (quoting <u>Williams v. New York City Hous. Auth.</u>, 61 A.D.3d 62, 66-69 (1st Dep't 2009)); <u>see also</u> <u>Vargas v. Morgan Stanley</u>, No. 10-4043-cv, 2011 WL 4001036, at *2 (2d. Cir. Sept. 9, 2011); <u>Dixon v. Int'l Fed'n of Accountants</u>, 416 Fed.Appx. 107, 110 n.1

(2d Cir. 2011); <u>Fincher v. Depository Trust and Clearing Corporation</u>, 604 F.3d 712, 723 (2d Cir. 2010).

It remains settled, however, that to sustain a NYCHRL retaliation claim, a plaintiff must produce evidence of a causal connection between a protected activity and an adverse action. <u>See</u> <u>Dixon</u>, 416 Fed.Appx. at 110 n.1 ("[L]ike her federal and state claims, [plaintiff's] retaliation claim under the NYCHRL fails as a matter of law because she did not produce any admissible evidence to demonstrate a causal connection between her protected activity and any allegedly adverse action."). Thus, in the absence of evidence of a causal connection between Dumay's various complaints and his reassignment or termination, the NYCHRL claims must be dismissed even under the more liberal standard applied to these claims.

Alternatively, assuming Dumay could establish a prima facie case of retaliation, the NYCHRL claims are dismissed given the legitimate, non-discriminatory reason for defendants' actions and the lack of evidence suggesting pretext for retaliation.

C.   <u>**Common Law Claims**</u>

Finally, Dumay asserts a state law claim for intentional infliction of emotional distress ("IIED"). Under New York law, a claim for IIED requires that the defendants' conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized society." Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999) (quoting Howell v. N.Y. Post Co., 81 N.Y.2d 115, 122 (1993)) (internal quotation marks omitted). Not only were the defendants' actions not outrageous, but they were a reasonable and supportable response to Dumay's misconduct. Thus, Dumay's IIED claim is dismissed.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted.

**SO ORDERED.**

Dated:     New York, New York
           October 13, 2011

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

26

Copies of the foregoing Order have been mailed on this date to the following:

**Plaintiff**
Ian Belinfanti, Esq.
481 Eighth Avenue, Suite 1545
New York, NY 10001

**Defendant**
Jamie M. Zinaman
Office of the Corporation Counsel
City of New York
Law Department
100 Church Street
New York, NY 10007